JUDGE CROTTY

Kenneth A. Goldberg, Esq. (KG 6311)
**GOLDBERG & FLIEGEL LLP**
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiff

**'09 CIV 8615**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

RENEE SCHOENFELD                    :

                Plaintiff,          :

        - against -                 :

PRINTING HOUSE FITNESS CENTER       :
LTD. AND ORB MANAGEMENT, LTD.
                                    :
            Defendants.
                                    :

- - - - - - - - - - - - - - - - x

**COMPLAINT AND JURY DEMAND**

**JURY TRIAL DEMANDED**



## NATURE OF THE ACTION AND THE PARTIES

1.    This is an action to redress unlawful discrimination
and harassment based on sex, unlawful retaliation, and unlawful
employment practices, under Title VII of the Civil Rights Act of
1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the
New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. §
290 et seq., and the New York City Human Rights Law, (the
"NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

2.    Plaintiff Renee Schoenfeld ("Ms. Schoenfeld" or
"Plaintiff") is an adult female, residing in New York City.

3.    Upon information and belief, Printing House Fitness
Center Ltd. ("Printing House") is a New York corporation with a
place of business at 421 Hudson Street, New York, New York 10014.

4.    Upon information and belief, Orb Management, Ltd. ("Orb") is a New York corporation with a place of business at 421 Hudson Street, C-9, New York, New York 10014-3678.  Upon information and belief, "Orb" is the parent of "Printing House."

### JURISDICTION AND VENUE

5.    This Court has jurisdiction over Plaintiff's claims pursuant to federal law, Title VII, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1331, 1343, 1367(a) and 2201.

6.    Venue is proper in this district pursuant to federal law, Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391.

7.    In February 2006, Plaintiff filed a timely charge of discrimination, harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

8.    In November 2008, the EEOC issued a Determination in favor of Ms. Schoenfeld on her claims.  On or about July 14, 2009, the EEOC issued a Notice of Right To Sue letter.

9.    Plaintiff mailed a copy of this Complaint to the New York City Commission Of Human Rights and the New York City Corporation Counsel.

10.   Plaintiff filed this lawsuit in a timely fashion and satisfied all of the statutory prerequisites to filing same.

11.   Plaintiff seeks an award of appropriate relief.

### INTRODUCTION

12.   Defendants discriminated against Ms. Schoenfeld because of her sex, and retaliated against her because she opposed, objected to and filed complaints of discrimination.

13. Defendants unlawfully discriminated against Plaintiff based on her sex regarding compensation, terms, conditions and privileges of employment, and employment opportunities, unlawfully harassed her, forced her to work in a hostile work environment, unlawfully retaliated against her and unlawfully discharged her. Defendants treated Plaintiff differently than, and accorded preferential treatment to, males and persons that did not complain of discrimination.

14. During Plaintiff's employment, Defendants made discriminatory compensation decisions and adopted discrimination compensation practices, and subjected Plaintiff to discriminatory compensation decisions and discriminatory compensation practices.

15. Plaintiff opposed, objected to and complained about the unlawful conduct. Defendants failed to take appropriate remedial action and failed to put an end to the unlawful conduct and it continued throughout Plaintiff's employment. Defendants retaliated against Plaintiff and unlawfully discharged her.

## PLAINTIFF'S EMPLOYMENT

16. On or about July 26, 2003, Plaintiff began working for Defendants as a Sales Associate. During Plaintiff's employment, she received paychecks issued by Orb.

17. During Plaintiff's employment, her direct supervisor was Christine Forestor ("Ms. Forestor or "Forestor").

18. Defendants had a main sales office that received incoming telephone sales leads and received the most "walk in"

-3-

sales leads.  Peter Vita ("Vita"), a male Sales Associate, worked from the main sales office.

19.  From time to time, Ms. Schoenfeld asked to work from the main sales office.

20.  Defendants accorded preferential treatment to Vita by allowing him to work from the main sales office and denying Plaintiff equal use of that office.  Upon information and belief, Defendants gave Mr. Vita a superior compensation package.

21.  Plaintiff complained to Ralph Anastasio ("Anastasio"), General Manager of Printing House, that she had been denied equal use of the main sales office and sought a fairer shift rotation into the main sales office.

22.  Anastasio said that he would not rotate use of the main sales office equally and would not reduce Plaintiff's sales goals.  Anastasio admitted that this was unfair, but said it "was the reality of the situation and it would not change".

23.  Defendants regularly allowed male employees to exercise whenever they wanted, and for more than their allotted break.  By contrast, when Plaintiff stepped away from her office, Anastasio asked the front desk to immediately locate her.

24.  Anastasio also demanded that Plaintiff keep open the glass door to her office.  Anastasio did not require male employees to do so.  Plaintiff's office was located in front of the boxing area where music was played and whistles were blown. Defendants, by requiring Plaintiff to keep her door open, made her work environment noisy and unpleasant.

-4-

25. On or about April 23, 2004, Plaintiff closed her office door in order to listen to her telephone messages. That same day, the maintenance woman entered Plaintiff's office to and vacuum. While Plaintiff was on the phone with a client, the maintenance woman left and closed Plaintiff's door.

26. Anastasio then flung the door open and screamed, "I thought I told you to leave the fucking door open!" Plaintiff was in shock and feared for her safety. Plaintiff immediately complained to Forestor about Anastasio's behavior and comments.

27. Plaintiff's job duties requires regular use of a telephone. Plaintiff asked Anastasio for a new telephone because Plaintiff's telephone was not functioning properly. Defendants did nothing in response to Plaintiff's request.

28. By contrary, Defendants provided new telephone headsets and computers to many of Plaintiff's male coworkers, including but not limited to employee Jorge Santiago, and Joe Maysonet ("Maysonet"), Fitness Manager. Plaintiff's job duties involved more phone use than the duties of those males.

29. Plaintiff's coworkers advised her that Maysonet was telling them that she "had a thing" for him and that she "wanted" him.

30. During the first week of Plaintiff's employment at Printing House, Maysonet invited himself to join Plaintiff and Plaintiff's friend for dinner.

-5-

31. The next day, Maysonet came into the office and told staff that he and Plaintiff had been out on a date together and that Plaintiff was staring at his "package", which was false.

32. During Plaintiff's employment, Maysonet repeatedly engaged in various acts of sexual harassment against Plaintiff.

33. Maysonet repeatedly put his arm around Plaintiff in a sexual manner and told her that they would make a great couple.

34. Maysonet told Plaintiff and her coworkers that there was a great deal of sexual tension between them. He stated that Plaintiff was looking at his "package."

35. Maysonet also asked several of Plaintiff's coworkers if they could see the sexual energy between him and Ms. Schoenfeld.

36. Maysonet stared at Plaintiff throughout the workday.

37. Plaintiff rejected Maysonet's sexual advances and made it clear to him that his conduct was unwelcome and offensive.

38. Maysonet told Plaintiff's co-workers that he wanted to get rid of Plaintiff.

39. During Plaintiff's employment, Defendants did not give Plaintiff any EEO policy.

40. On multiple occasions, Plaintiff complained to Forestor about Maysonet's harassing behavior and comments.

41. On or about May 12, 2004, Anastasio summoned Plaintiff into his office.

42. Anastasio accused Ms. Schoenfeld of bad-mouthing him at the front desk and Plaintiff advised Anastasio that the accusations were false.

-6-

43.   Anastasio also stated that Maysonet told him that Ms. Schoenfeld was talking about him.

44.   While Plaintiff was speaking to Anastasio, Maysonet entered the office and blocked the door.  Plaintiff felt trapped, intimidated and threatened.  Plaintiff requested that Forestor join the meeting in Anastasio's office.  Anastasio and Maysonet refused to call Forestor into the meeting.

45.   At the meeting, Anastasio told Plaintiff that trainers had problems with Forestor and Ms. Schoenfeld, and Anastasio told Plaintiff to be "more country friendly."  Plaintiff advised Anastasio that these false accusations stemmed from Plaintiff's rejection of Maysonet's sexual advances.  Anastasio did not respond.  Plaintiff left Anastasio's office crying and immediately complained to Forestor about what had just occurred.

46.   On or about May 14, 2004, Plaintiff and Forestor met with Anastasio to discuss the May 12, 2004 meeting.  They told Anastasio that they believed Maysonet's actions and comments amounted to sexual harassment, and that it was extremely upsetting.  Defendants did not take remedial action.

47.   The harassment and comments towards Plaintiff continued throughout 2004 and 2005.  For example, Maysonet continued to tell Plaintiff that she was sexy and that there was a great deal of sexual energy between them.

48.   On or about February 1, 2005, Plaintiff met with Anastasio.  Plaintiff complained about the ongoing sexual remarks that Maysonet continued to make towards her, even after Plaintiff

-7-

had repeatedly told him to stop. Plaintiff also told Anastasio
that she continued to hear that Maysonet wanted to have her
fired, and Plaintiff complained that Maysonet wanted to have her
fired because she continued to reject his sexual advances.
Plaintiff emphasized that she simply wanted to come to work and
do her job without being threatened and sexually harassed.
Anastasio told Plaintiff that she did a great job and that he
would look into her complaints. After the meeting, Ms.
Schoenfeld advised Forestor of her complaints to Anastasio.

49.  The unlawful conduct continued. On one occasion,
Maysonet was throwing a party at the Cub Room (a local bar), and
invited everyone in the office except for Plaintiff and Forestor.
The next day, Maysonet stood directly in front of Plaintiff's
office door and was talking about the party in a very loud voice
so that Plaintiff could hear everything that he was saying.
Maysonet told Plaintiff's coworkers that he was trying to upset
Plaintiff and make her feel uncomfortable.

50.  Plaintiff began to suffer from irritable bowel syndrome
(IBS). Plaintiff's physician told her that this condition is
generally a result from stress. Plaintiff had to undergo a
colonoscopy and an endoscopy. Plaintiff was forced to seek
treatment and medication for this painful medical condition.

51.  In the Spring of 2005, Defendants summoned Plaintiff
into a meeting with Anastasio and Peter Cohen (an advertising
executive) regarding a  new marketing campaign.  Forestor was
also at the meeting.  The campaign included nude breasts and nude

-8-

buttocks.  Plaintiff and Forestor complained that they found the campaign extremely offensive.  In the next sales meeting, Anastasio, said that breasts and sex are what sells.

52.  Defendants sought to coerce Plaintiff to resign.  For example, Defendants docked Plaintiff's wages even if she was only a few minutes late.  By contrast, Defendants did not dock male employees when they were late.  Defendants failed to pay Plaintiff for hours that she worked.  On one occasion, Plaintiff and Forestor visited the New York State Department of Labor.

53.  In the Spring of 2005, Plaintiff asked to speak to Anastasio regarding Plaintiff's sales commissions.  Plaintiff complained that she was denied payment of earned commissions. Anastasio told Plaintiff that she needed to find a company that would pay her more, implying that she should quit.  Plaintiff asked Anastasio if he was threatening her and he did not respond.

54.  In the Summer of 2005, Anastasio ordered Plaintiff and Christian Politan (then a part-time employee) to stand outside of the building at various times to solicit clients.  On one occasion, Anastasio called Mr. Politan's cellular telephone and told him that he was not allowed to speak to Plaintiff.

55.  Defendants' unlawful conduct escalated and Anastasio and Maysonet told Plaintiff's coworkers that they could not speak to her while she was in her office.  For example, Defendants told Lisa Wilkenson, (a trainer) that she could not talk to Plaintiff or go into her office.

-9-

56. In late September 2005, Anastasio and Maysonet were discussing expanding and moving the business to a new location on Second Avenue in Manhattan.

57. In early October 2005, Plaintiff's coworkers informed her that Maysonet was again stating that he wanted her fired and wanted to replace her with Mr. Politan. Plaintiff advised Forestor about what she had heard.

58. On October 7, 2005, Forestor questioned Anastasio about what Plaintiff had told her regarding having Plaintiff fired. Anastasio did not respond to Forestor.

59. On October 10, 2005, Defendants told Plaintiff that her hours were being reduced to zero and that there was a "downsizing." By their actions, Defendants terminated Plaintiff's employment.

60. Upon information and belief, Plaintiff was the only employee terminated that day.

61. Defendants' stated reason for the termination of Plaintiff's employment was a pretext for discrimination and retaliation.

62. Defendants unlawfully discharged Plaintiff's employment on October 10, 2005.

63. Since Ms. Plaintiff's termination, Defendants hired additional trainers and front-end representatives.

64. In February 2006, Plaintiff filed an EEOC Charge.

65. According to Defendants' EEOC Position Statement, Defendants replaced Ms. Schoenfeld with Christian Politan.

According to Defendants' EEOC Position Statement, Mr. Politan was elevated from part-time employee to full-time employee. Ms. Schoenfeld was more qualified than Mr. Politan. Upon information and belief, Defendants gave Mr. Politan a larger compensation package than Plaintiff had during her employment.

66.  Forester executed an Affirmation supporting and corroborating Plaintiff's EEOC Charge.

67.  For example, according to Defendants' EEOC Position Statement, Forester concurred with the decision to terminate Plaintiff's employment.

68.  In Forester's Affirmation, she stated, among other items, "As Renee's direct supervisor, I was never consulted or informed that Printing House was going to terminate her."

69.  Forestor was not aware of and did not participate in the decision to terminate Plaintiff's employment.

70.  The EEOC conducted an investigation regarding Plaintiff's EEOC Charge and, in or about November 2008, issued a Determination in Plaintiff's favor.

### DEFENDANTS' CONDUCT WAS UNLAWFUL

71.  Defendants' conduct, as alleged herein, constituted unlawful discrimination, harassment and retaliation. Defendants' proffered reason for the conduct was a pretext for unlawful discrimination, unlawful discharge and unlawful retaliation.

72.  Defendants' discrimination and harassment was severe and pervasive, adversely affected the terms, conditions and privileges of Plaintiff's employment, resulted in adverse

-11-

tangible employment actions, and created a hostile, offensive and abusive work environment.

73.  Tolerance of unlawful discrimination and harassment was a term and condition of Plaintiff's employment, and she suffered adverse tangible employment actions because she refused to acquiesce to that conduct and protested such conduct.  Plaintiff has also been the victims of "quid pro quo" harassment.

74.  Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination, harassment and retaliation.

75.  Defendants knew or should have known of the unlawful discrimination, harassment and retaliation.  Defendants failed to exercise reasonable care to prevent and correct unlawful discrimination, unlawful harassment and unlawful retaliation.

76.  Defendants authorized unlawful discrimination, unlawful harassment and unlawful retaliation and the employees who engaged in such unlawful conduct were unfit and Defendants were reckless and/or negligent in employing them.  Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled, supported, ratified, approved, condoned and/or coerced the unlawful conduct.

77.  Upon information and belief: (a) Defendants discriminated against and/or harassed other employees; (b) one or more other employees opposed, objected to and/or complained about discrimination and/or harassment; and (c) Defendants retaliated

-12-

against one or more other employees who objected to, opposed and/or complained about discrimination and/or harassment.

78. Defendants engaged in a continuing violation of law.

79. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, among other items, substantial damages. Plaintiff is entitled to the relief sought herein.

80. Plaintiff seeks to hold Defendants jointly and severally liable under various legal doctrines, including without limitation, integrated enterprise, single employer doctrine, alter ego, respondeat superior, joint employer doctrine, agency, successor liability, aiding and abetting liability and/or other grounds. Upon information and belief, Printing House Fitness Center Ltd. and Orb Management Ltd. are a "single employer" for purposes of applicable law, because at all relevant times, they had: (1) interrelated operations; (2) centralized control of labor relations; (3) common management; and/or (4) common ownership or financial control. There is an identity of interests between Printing House Fitness Center Ltd. and Orb Management Ltd.

## COUNT ONE

### (TITLE VII)

81. Plaintiff repeats and realleges every allegation in paragraphs 1 through 80 of this Complaint with the same force and effect as though fully set forth herein.

-13-

82. This Count is brought under Title VII, 42 U.S.C. §
2000e et seq., as amended, and reference is made to Title VII in
its entirety and to 42 U.S.C. §§ 2000e, 2000e(b), 2000e(f),
2000e-2(a), 2000e-3(a), 2000e-5(g), 2000e-5(k), and 42 U.S.C. §
1981a.

83. At all relevant times, each Defendant was an "employer"
within the meaning of Title VII.

84. At all relevant times, Plaintiff was an "employee"
within the meaning of Title VII.

85. Defendants' conduct, as alleged herein, constituted
unlawful employment practices and unlawful discrimination,
including without limitation on the basis of sex in violation of
Title VII.

86. In addition, Defendants made discriminatory
compensation decisions and adopted discrimination compensation
practices, and subjected Plaintiff to discriminatory compensation
decisions and discriminatory compensation practices.

87. Defendants' conduct, as alleged herein, constituted
unlawful retaliation in violation of Title VII.

88. Defendants' conduct, as alleged herein, was carried out
with malice or reckless disregard for Plaintiff's protected
rights to be free from discrimination, harassment, and
retaliation.

89. As a result of Defendants' unlawful conduct, Plaintiff
has suffered and continues to suffer injury, with resulting
monetary and other damages, including without limitation, lost

-14-

wages/bonuses, commissions, lost benefits, pension monies and
contributions, lost interest and attorneys' fees and costs.
Plaintiff is entitled to recover such monetary and other damages,
punitive damages, interest, and attorneys' fees and costs from
Defendants under Title VII.

90.  As a further result of Defendants' unlawful conduct,
Plaintiff has suffered and continues to suffer, among other
items, impairment and damage to her good name and reputation,
emotional distress, mental anguish, emotional pain, suffering,
inconvenience, loss of enjoyment of life, and lasting
embarrassment and humiliation.  Plaintiff is entitled to recover
damages for such injuries from Defendants under Title VII.

## COUNT TWO

### (NYSHRL)

91.  Plaintiff repeats and realleges every allegation in
paragraphs 1 through 90 of this Complaint with the same force and
effect as though fully set forth herein.

92.  This Count is brought under the NYSHRL, N.Y. Exec. L. §
290 et seq. and reference is made to the NYSHRL in its entirety
and to N.Y. Exec. L. §§ 292, 292(1), 292(5), 292(6), 296, 296(1),
296(1)(a), 296(1)(e), 296(3-a)(c), 296(6), 296(7), and 297(9).

93.  At all relevant times, each Defendant was an "employer"
within the meaning of the NYSHRL.

94. At all relevant times, Plaintiff was an "employee"
within the meaning of the NYSHRL, and a "person" within the
meaning of the NYSHRL.

95.  Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination, including without limitation on the basis of sex, in violation of the NYSHRL.

96.  Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of the NYSHRL.

97.  Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e.g., NYSHRL § 296(1) and § 296(6).

98.  As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, from Defendants under the NYSHRL.

99.  As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.  Plaintiff is entitled to recover damages for such injuries from Defendants under the NYSHRL.

## COUNT THREE

### (NYCHRL)

100. Plaintiff repeat and reallege every allegation in
paragraphs 1 through 99 of this Complaint with the same force and
effect as though fully set forth herein.

101. This Count is brought under the NYCHRL, N.Y.C. Admin.
Code § 8-101 et seq. and reference is made to the NYCHRL in its
entirety and to N.Y.C. Admin. Code §§ 8-102, 8-102(1), 8-102(5),
8-102(17), 8-107, 8-107(1), 8-107(1)(a), 8-107(6), 8-107(7), and
8-502.

102. At all relevant times herein, each Defendant was an
"employer", "covered entity" and a "person" within the meaning of
the NYCHRL.

103. At all relevant times herein, Plaintiff was a "person"
within the meaning of the NYCHRL.

104. Defendants' conduct, as alleged herein, constituted
"unlawful discriminatory practices" and unlawful discrimination,
including without limitation on the basis of sex, in violation of
the NYCHRL.

105. Defendants' conduct, as alleged herein, constituted
unlawful retaliation in violation of the NYCHRL.

106. Defendants' conduct, as alleged herein, was carried out
with malice or reckless disregard for Plaintiff's protected
rights to be free from discrimination and harassment, and
retaliation.

-17-

107. Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

108. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, commissions, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs.

109. As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Plaintiff is entitled to recover damages for such injuries from Defendants under the NYCHRL.

110. Plaintiff is entitled to recover monetary damages and other damages and relief, punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request judgment on all Counts, as follows:

(A) On Count One, enter a judgment declaring the acts and practices of Defendants to be in violation of Title VII;

(B) On Count One, award Plaintiff as against Defendants the amount of wages, including without limitation back pay, front

-18-

pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(C)  On Count One, award Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(D)  On Count One, award Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(E)  On Count One, award Plaintiff as against Defendants punitive damages;

(F)  On Count One, award Plaintiff as against Defendants the costs of this action, together with reasonable attorneys' fees;

(M)  On Count Two, enter a judgment declaring the acts and practices of Defendants to be in violation of the NYSHRL;

(N)  On Count Two, award Plaintiff as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commissions, benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(O)  On Count Two, award Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(P)  On Count Two, award Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(Q)  On Count Three, enter a judgment declaring the acts and practices of Defendants to be in violation of the NYCHRL;

(R)  On Count Three, award Plaintiff as against Defendants the amount of wages, including without limitation back pay, front pay, bonuses, commission benefits, pension monies and contributions, and interest lost as a result of Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(S)  On Count Three, award Plaintiff as against Defendants consequential damages for losses resulting from Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(T)  On Count Three, award Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of